et al. Arguing for the appellant, Bobby Joe Barron, is Mr. David Durie. Arguing for the appellee, Blake Boehm Law Group PC, is Mr. Albert Bronski. Each side will have up to 20 minutes for their argument. The appellant will also have up to 5 minutes for rebuttal. You will see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. Finally, please remember no photographs and only the clerk of the court is permitted to record these proceedings today. Counselor Durie, could you move your camera just a little bit? Can you see what you got? So we can see. Okay. That's good. That's fine. Sorry. I'm sorry. Go ahead. May it please the court. This is a case that for attorney malpractice, where the first amended complaint was dismissed under section 615 for failure to state a cause of action and under section 619 under the doctrine of judicial estoppel. The trial court ruled that the defendants owed no November 23, 2015, which was moments before she agreed to a marital settlement agreement that provided her with only a $250,000 house out of what we contend was a marital estate of $3 million. Addressing the motion under 615 first, with respect to whether or not there was a breach of duty before the defendants withdrew as Bobby Joe's attorney, I would submit there were two respects that they breached their duties before they withdrew. One is, and they admit this on page, excuse me, on page nine of their brief that discovery was not completed in the divorce case before November 23. And they had filed a motion to extend the deadline for discovery and had been denied before they withdrew as attorney for Bobby Joe. And they admit in their brief here that discovery was not complete. So they did not complete discovery. They were paid $52,000 in attorney's fees. And the time for completing discovery had expired and they couldn't get it extended. So they that was all of that occurred before they withdrew as the attorney. Secondly, they failed to appeal the January 6, 2015 order in the third divorce case, which they were representing Bobby Joe on as well. Ordering Bobby Joe to quit claim the marital home worth $900,000 to Kenneth Fultz, her ex-husband. And they told her that she had to sign the quit claim deed after the court ruled against her on that motion. And what had happened there is these parties, as the court well knows, have been married and divorced four times. And we're talking about the fourth divorce. The third divorce was completed in 2007, and it required the marital home to go to Kenneth Fultz, the husband. The fourth marriage occurred in 2010. And then in 2011, a deed was issued for the marital home jointly to Bobby Joe and to Ken. Then in 2014, Kenneth Fultz filed for divorce. And so his attorney, instead of arguing that the marital home was part of the marital property for the fourth divorce, went back to the court in the third divorce case, which was now some eight years old, and filed a motion to enforce the divorce decree in the third divorce, providing that the marital home would go to Kenneth Fultz. And one of the things we've alleged that was a breach of duty before the defendants withdrew as Bobby Joe's attorney was, first of all, their activity in permitting that to occur, their recommendation that she sign the quit claim deed, and their failure to appeal that order. Now, it's been established by a previous decision in this court, in re marriage of parts, which we cite in the reply brief, a 1994 decision, that once the same two parties remarry, the previous divorce decree is not void. Because that would mean everything that was completed under the force of previous divorce decree would be would have to be undone. But was unenforceable between the parties with respect to any matter that had not been completed with respect to that previous divorce decree. So when Kenneth Fultz attorney went to the, to the judge in the third divorce case, to kind of get around the pending fourth divorce case on the marital property, he asked the judge in the third divorce case, to enforce an unenforceable divorce decree, it was unenforceable, because Bobby Joe and Kenneth Fultz had remarried in 2010. That's the NRA parks case. And we've cited to the court in the reply brief case, intergovernmental exchange case, which provides that generally issues approximate cause, and the facts establishing whether a duty was involved or not are questions of fact for a jury to decide. But where the claim is that the defendant attorneys committed malpractice by failing to appeal a decision, that's a decision of law for the court to decide. Now, the trial court, in this case, in our current case, did not address this issue at all. The trial court simply said, well, once they withdrew as her attorney, they owed her no duty. That's the end. That's the end of that. Council didn't be acquiesce at that time. But if she wanted to proceed, she said yes, without counsel. She did. She did. And but part of that is that she was suffering from anxiety and depression and was addicted to Xanax. And the defendants knew that. And they also knew that Kenneth Fultz was not going to offer a fair settlement agreement. And they bailed out at the last minute, knowing that discovery was incomplete and they had been paid $52,000. We then filed a 1401 petition when I represented Bobby Joe, which is about a year after the divorce decree of November 23, we filed a 1401 petition to vacate the property settlement of November 23, 2015. And the excuse me, the trial court ruled that ruled against her. But without an evidentiary hearing, there was a motion to dismiss, which the trial court never addressed. And the trial court simply said, you lose, you didn't prove that you're entitled to relief under Section 1401. So we appeal that decision to this court. And on September 5 2018, this court issued an order reversing that decision on the 1401 petition and remanding for an evidentiary hearing. After that case was remanded, we had some settlement negotiations and entered into a new marital or property settlement agreement MSA that provided Bobby Joe Fultz with about $478,000 more than she would have obtained under the original MSA that was entered immediately after the defendants withdrew from from her representation in this case. So and this court recognized that she had stated a viable claim that she had been under the dominion and control of her husband during all of these fourth marriages in which he really mistreated her somewhat. And she really sort of didn't have a will of her own, so to speak. And she was left on November 23 with her attorneys are the one who initiated they wanted to withdraw. Although this is not stated in the first amendment complaint, I believe their argument was, well, we think she's going to enter into some kind of side agreement that's not in the written agreement. So we want to withdraw. We would submit that they really just bailed out because they couldn't take additional discovery. They've been paid $52,000. They couldn't get additional discovery because their motion to extend the deadline had expired. And they were left with knowing that Kenneth Fultz wasn't going to offer a fair settlement. So they simply bailed out. So the issues are a little different, but she did agree to it. But that was later by this court decided that she had viable grounds to set that aside. And while we didn't have a hearing on the 1401 petition, we achieved a settlement that was far better than the one that existed on November 23, 2015. And the marital property was worth $900,000. And it's just a matter of law under the holding of Inouye Marriage of Parks, that the third divorce court did not have authority to enforce the third divorce decree and order Bobby Joe to over to Kenneth Fultz while the fourth divorce proceedings were pending. That's just as a matter of law. So that I would submit that's a clear violation of the duties of an attorney to their client. They should know the law that what Kenneth Fultz did, he simply couldn't do. It had to be the marital home had to be considered part of the marital property in the fourth divorce case. And that's a $900,000 issue right there. In addition, as far as the duties of an attorney to their client, we've cited Lopez versus Clifford and Peterson versus Katten Muchin case at pages four and five of our reply brief, for example, and in the original brief that point out an attorney's duty must be tailored to the needs and sophistication of their client, which presents a question of fact. And this includes the duty to protect the client from self inflicted harm. So here the defendants initiated the motion to withdraw knowing that Bobby Joe would have no option but to accept an unconscionable settlement agreement. They were acting out of self interest, not out of interest of what was what was best for the client. With of Mitchell versus Shane Fussell and Bernie, and I'll just quote from it. There may be circumstances where the first attorney could be held to proximately cause a plaintiff damages where their acts or omissions leave doubt about the subsequent viability of plaintiff's claims after their representation ends. And that cited a Texas case of via real versus Cooper, which which involves a statute of limitations. We're not dealing with the statute of limitations here. But I submit that the defendants had a duty not to withdraw and leave Bobby Joe with no option but to sign an unconscionable settlement agreement, realizing that they couldn't take additional discovery, but they needed additional discovery, especially under the circumstances where once we got involved in and this court made his decision of September 5 2018 that we were able to obtain a settlement that was like two times or three times what the original settlement was pretty much the The second ground for dismissal was under section 619 under the doctrine of judicial estoppel. And the argument as I understand it is that because Bobby Joe agreed to the terms of the November 23 2015 MSA, that under the doctrine of judicial estoppel, she can't complain about her lawyers doing anything that caused her not to get a better offer or not to get a better result of the divorce case. And I would submit initially that argument flies in the face of the decision by this court on September 5 2018. Because if that logic had applied, then this court would have simply affirmed the the order entering judgment against her on the on her petition under 1401. The and the November 23 2015 MS MSA was not the final MSA. In view of the fact that a 1401 petition was filed, this court ruled that there was a viable claim under 1401 to vacate the subsequent MSA with far better terms for Bobby Joe was entered into after this court's decision in the previous case. The case of Seymour versus Collins is cited for the doctrine of judicial estoppel. And that requires there are at least five elements that have to be met. A party must have taken two positions that are factually inconsistent in separate judicial proceedings, intending for the trier of fact to accept the truth of the facts of labs, and to have succeeded in the first proceeding and receive some benefit from it. And it's a discretionary equitable doctrine to be applied, I would submit to the court, it simply does not apply here. First of all, there's no inconsistent positions and I've cited cases to the court that a claim by a party to a divorce case against their spouse or ex spouse is distinct from a claim against the attorney for advice the attorney gave that party to the divorce case during the proceedings. So it's not this it's not the same issue as to whether or not the defendants in this case were negligent as attorneys. The issue in the divorce case is simply what is the marital property and what is the fair share of the marital property. In this case, the argument is the attorneys by their violations of their duties to the plaintiff in this case, prevented her from getting a much better settlement or resolution through a trial on the merits. Because they did not take discovery, the discovery cut off was occurred and they couldn't get it extended. They admit they didn't have a sufficient discovery. And in addition, they clearly made a mistake by allowing Kenneth Fultz to get an order in the third divorce case, enforcing the third divorce decree to order Bobby Joe to transfer the marital home back to Kenneth Fultz when a deed issuing it to Bobby Joe and Kenneth Fultz jointly had been issued after they remarried. The deed being in 2011, they remarried in 2010. And the In re Parks case provides clearly that the court in the third divorce case did not have the authority. In other words, the third divorce decree to the extent it had not already been fulfilled was no longer enforceable because the parties had remarried and they would have to start from scratch with respect to their divorce proceedings in the subsequent divorce case, the fourth divorce case. So I would say In re Parks, just as a matter of law, establishes that the defendants in this case breached their duty in permitting the Kenneth Fultz to obtain a judgment in the third divorce case, ordering Bobby Joe to transfer the marital home worth $900,000 to Kenneth Fultz, not appealing that decision, not even arguing that the third divorce court could not enforce the decree since they had remarried in view of In re Parks, a 1994 decision. And a couple of other minor points. I would say that the standard of review is de novo. I know in their brief, the defendants made a passing argument about manifest weight of the evidence, but the cases they cited were bench trial cases in which there had been findings of fact and evidentiary hearing. And there was no evidentiary hearing in our current case and no findings of fact. Simply de novo is the standard. And then with respect to the section 16, I'm sorry, with respect to the section 615 motion to dismiss, the defendants state a lot of their motion to dismiss the original complaint and their first motion to dismiss the first amended complaint, as well as their second motion to dismiss the first amended complaint. And they cannot rely on those facts with respect to the 615 motion to dismiss, which has to be based simply on the facts that are alleged in the first amended complaint. Um, I believe I've pretty well covered my points. If there's any questions, um, I'm almost out of time, but that's pretty much the argument we have. Thank you, Counselor. Counsel. Morning. May it please the court. Could you speak up a little bit and maybe get closer to the mic? Sure, Your Honor. Is this better? Yes. May it please the court, Counsel. We believe that the trial court's decision should be affirmed by this court. The plaintiffs simply cannot assert a claim for legal malpractice as a matter of law. And there's two really critical facts that support our position, Your Honors. First of all, the Blake lawyers, the defendants, were not attorneys of record for Bobby Joe Fultz when she unilaterally decided to enter into the marital settlement agreement. Secondly, there was no deadline. There was no trial setting requiring her or forcing her to act at the time that she did when she acted against her prior attorney's advice, against the prior advice of Mr. Blake and his law firm. She went ahead and entered into this marital settlement agreement when she didn't have to. There was no pending hearing. There was no trial set. She did this all on her own. It was simply a situation where she, when she was represented pro se and her soon-to-be ex-husband and his lawyer, approached the court for an informal prove-up hearing on this marital settlement agreement. Counsel, uh, opposing counsel says, yeah, but you know, you guys bailed on her and and she, uh, you knew her mental state and therefore I guess you should have foreseen what would happen. You know, what's your response to that? Well, uh, that's what they allege, but the facts are, um, actually a little bit different. I mean, she negotiated this settlement agreement on her own. It was, it was against our advice and because she wanted to go through with it and on top of it, she tells us that what they're going to represent to the court isn't the complete agreement that she's now negotiated with her soon-to-be ex-husband that he's going to give her money separately from what's going to be on the record. And we say, we're not going to be a part of that. You need to let us do our job. And she's like, no, I want to go through with this particular settlement agreement. And then we say, well, we can no longer be your attorney because we are then in a conflict position with her, which is following our ethical responsibility. So we withdrew not because we didn't feel like she had a case or that we weren't prepared to go to trial. We withdrew because she was bound and determined to accept a settlement that we thought was not in her best interest and ethically going to do something which we didn't think was appropriate in front of the court or as an officer of the court. So it's a lot different than the case where we would have been different if she was set for trial and we withdrew the morning of trial, and she was left with no other option but to accept what she now claims is an unconscionable settlement. That's not what happened here. We withdrew. She could have had 21 days under the Supreme Court rules to get other counsel and to proceed. She decides not to do that. And then later on that morning enters into the settlement agreement on her own, which Judge Gomerick at the time put on the record that she had agreed to the withdrawal of the Blake defendants as her attorney, and then that she on her own was going to proceed pro se, which she does. And then they go through the recitation that she understands the settlement agreement and that's acceptable to her, and she accepts it. Then a year later, she has misgivings and files a suit not only to vacate that marital settlement agreement, but also files a suit against my clients in this legal malpractice case. Under the law, a lawyer's duty to exercise due care terminates when the attorney-client relationship terminates when there are circumstances which there remains a viable cause of action. Here there was always a viable cause of action after the Blake defendants withdrew. She could have gotten another attorney. She could have gone to trial. Counsel says that, you know, the resolution of this case needed to be done primarily through trial because Mr. Fultz was not going to offer any reasonable settlement to her. Well, she knew that, and she could have gone to trial. There were all sorts of mechanisms that you can utilize under the discovery rules to get material prior to trial. There could have been 237 requests for information from Mr. Fultz made available so that during the course of a trial, there could have been a better settlement agreement, assuming that, again, that, you know, at the time that she entered into this, it was unconscionable. Now, I think that that makes, you know, a big difference. If she's got a viable cause of action at the time the attorney withdraws, which is exactly what the case was here, and then she on her own under no legal compulsion to enter into a settlement agreement at that time goes ahead and enters into a settlement agreement, that's essentially on her. And in order to show or to make a legal malpractice case, you have to show that, first of all, there was a duty by the attorney. There's a question as to whether or not there was a duty here, obviously, with the Blake defendants, because they had withdrawn, and their duty should end at that particular point in time. Was there a breach of the duty? Was it approximate cause? And did it cause damages? She can't fulfill the proximate causation requirement for a legal malpractice case when she voluntarily enters into an agreement, which she was not compelled to do so, pursuant to the circumstances that were created by the lawyer. This case was not set for trial. There was not even a scheduled hearing on the morning of November 25, 2015, when this marital settlement agreement was entered. So, and I think there's the case law is clear. If we look at the land versus Greenwood, or the Mitchell case that we've cited in our case, Nettleton versus Stogstill, the courts say, you know, when there's a viable cause of action, and in circumstances of litigation, which this was, this isn't a situation where the lawyers prepared probate documents or contract documents in which whatever the lawyers had done was the way that it was going to end, regardless of whether they were representing her at the time. This is a situation where she had opportunities to proceed with her divorce. She didn't want to proceed with her divorce. She chose of her own accord to accept the terms of this marital settlement agreement, and agreed on the record that this marital settlement agreement was acceptable to her. And now she says, well, I was under Xanax, and I was under the coercion and control of her ex-husband, and I wasn't thinking clearly. That's why, when an attorney withdraws, the Supreme Court allows 21 days to get another lawyer, so that you, no one, no one is forced to do anything. But she decided on her own to waive all those rights to enter into this marital settlement agreement. Again, she did this unilaterally, and she did it against the advice of the defendant attorneys prior to the time that they withdrew. They were telling her, don't do this. So if they're telling her not to do this, which is, you won't, I've looked all over, your honors, for cases, and there isn't a single case that says that when the client, after the attorney has withdrawn, enters into some sort of an agreement, when they don't have any legal compulsion to do so, is, can then go back at their lawyer. This isn't a situation where this court is probably aware of, when you're claiming that the attorney gave you wrong advice in terms of entering into a settlement, and now you learn that it's insufficient. We weren't her attorneys at this time. We weren't urging her to do this. She did this all on her own, and therefore, she cannot, as a matter of law, show that she was, show that the defendant's conduct was the proximate cause of her damages. And that's why we have the 615 motion to dismiss, and that's why I believe that the trial court's ruling was correct. Secondly, under 619, we have the argument of judicial estoppel. Again, this is a situation where she has decided to accept a settlement, contrary to her previous lawyer's advice, but she decides to accept it, and then now she's turning around and saying, oh, no, I didn't really understand the terms of it or what I was getting under this settlement agreement, and therefore, it's the attorney's fault. And there are several cases that are similar to our situation that where the court has held that judicial estoppel applies. There's the case of Mitchell versus Rapani, which is a divorce case where Mr. Rapani enters into a settlement agreement. It's on the record. He's telling him, and he's agreeing as to exactly what he's getting, and then he turns around and he tries to sue the lawyer, saying, well, I didn't understand what I was doing, and therefore, I'm going to be able to sue you for malpractice because you didn't explain everything to me. You didn't explain my rights and what my possible recovery could be, and the court said, no, you can't do that. It's judicial estoppel. You were on the record accepting these particular terms. The terms were clear. You admitted that you understood them. Just because you're a layperson doesn't mean that you should be able to say, oh, well, I didn't understand those, so it must be the lawyer's fault. And there's several cases like that in the divorce situation, which is similar to what we have here. Even though we weren't even representing her, we weren't even telling her to accept these terms as, for example, in the case of Mitchell v. Rapani, we weren't even her lawyer at that time, but on her own, she decides to accept these things, and now she's saying, oh, no, this was all wrong. I didn't understand what I was doing. It's the lawyer's fault. Counsel, what about their argument that, yeah, but look, I wouldn't have been in this situation if you guys hadn't told me to sign this deed or you hadn't, you know, missed the discovery cutoff? We didn't miss any discovery cutoff, first, Your Honor. There was plenty of discovery that had been undertaken in this particular case. Mr. DeRee wants to refer to the $52,000. That's reflective of the work that was done on behalf of Mrs. Fultz during the pendency of their representation of her. There was discovery that had been done. We were concerned that Mr. Fultz was not being completely honest in all of the discovery. He was, and again, we're getting now into the facts as opposed to the pleadings, but for example, you know, his computer system miraculously is not recoverable, and we're trying to find out what his particular assets are and how he makes his money and things of that nature. Those things were all going on, so there was plenty of material that we had already had that we could utilize at trial in order to achieve the proper result for Ms. Fultz. Again, she was the one that was, she on her own was the one that negotiated this particular settlement that she ultimately agreed to with her husband. That was not done with Mr. Blake's permission. That wasn't done, it wasn't what Mr. Blake and his, and the lawyers in his firm expected to achieve here, but that was something she decided to do on her own. This business about this deed, if the court looks at the record, C-351, the motion to execute judicial deed, that was filed in the 06 case. That was in her prior divorce case, and whether that particular piece of property was then property, a joint property or a property that was the fourth divorce, the divorce in 2014-2015, that again, that property was subject to another determination of the court as to whether or not Mrs. Fultz had a property right or share to the value of that particular property. It didn't matter really what happened in 2006. The actual order that was entered wasn't ultimately going to affect the ruling of the trial court because the trial court could have again made a determination as to whether or not that was community property within the terms of the fourth divorce or the fourth marriage. I mean, these people had been married for on and off for four times over 25 years, and for Mrs. Fultz to claim that she didn't know what the holdings were of her husband, it's a little bit hard to swallow, Your Honor. So again, we believe that when she goes on the pro se, when I know that I had an opportunity to get counsel, I waive that right. I want to go through this all after Mr. Blake's office had withdrawn as her attorney, separates this case from any other case. And again, our duty ended at the time that we terminated our relationship with her. And it wasn't a situation where she was under a legal compulsion to act that particular day. The case wasn't set for trial. There wasn't even a scheduled hearing. She did this of her own accord. And she shouldn't be able to at that point to then turn around a year later and say, oh, I had misgivings over what I did. And it was the previous lawyer's fault. In fact, it's even more interesting that they were able to set aside or move forward with the 1401 motion to vacate this marital settlement agreement. She goes through discovery and then now has yet entered into another marital settlement agreement. Now she's two agreements past where she was with the and as a matter of law under approximate cause and duty analysis, we shouldn't owe her any duty because we withdrew at a time when she had a viable claim. She had numerous litigation options available to her to pursue. Yet she decided not to undertake those options. She decided on her own on the record to accept a particular distribution of property under that marital settlement agreement. And that should be the end of it. She shouldn't then be able to come back to her lawyer and say, oh, you put me in this position. We didn't put her in this position. She chose to put herself in that particular position and she wasn't required. She wasn't under any compulsion to do so. I think in terms of the 615, 619 arguments that they've made, I think the case law is clear that in the event that there is an argument to be made that the plaintiff has not set forth a cause of action under the law, that a motion to dismiss can be raised at any time. And that's exactly what we did under these particular circumstances. And I believe that this is properly in front of the court. It is the no vote for this court to make the decision. But again, when you look at the law, both for judicial estoppel, as well as I think the, the, uh, the decision of, uh, judge Rudolph at the trial level is correct. And it should be affirmed by this court. And I'll be happy to take any more questions that your honors have. I see no questions. That's all rebuttal. God's word. You hear me during a council jury. You're on mute. I'm not council. He's off mute now. That's a jury. No, he's still on mute. Is there any way to tell him? I'm trying to, I hear you guys. Can you hear me? Yeah, we can now. Sorry about that. Um, I've had a few zoom things, but, um, still stymies me once in a while. Um, the, uh, at the top of page nine of the, of the appellee's brief, they state quote, as defendants did not believe there to be adequate disclosure of the assets, comma, they did not recommend settlement. The discovery deadline had expired and the defendants filed a motion to extend it, which was denied prior to November 23, 2015. So a new lawyer cannot undo that. Certainly there would be an issue of fact as to whether a new lawyer would be expected to come in and persuade the court to allow additional discovery when the court had already denied a motion to extend the deadline with respect to the, um, statement that, uh, AJ made several times that the November 23, uh, MSA was against their advice. There's nowhere in the first amendment petition that that's alleged. And we're here on the, on the six 15 motion as to what's alleged in the first amendment petition. If we had a summary judgment motion and they made that argument, we could respond to it. If we had a trial and they presented that evidence, we could respond to it, but we're not here on a summary judgment motion. We're not here after a trial. So it's, it's not proper to argue that the, uh, November 23, 2015 MSA was against their advice. That's not in the first amendment, uh, complaint with respect to the citation of Mitchell versus Rapani, uh, on the judicial estoppel issue. That's a rule 23 order, which has no presidential value. And as we stated in the reply brief is contrary to the decision in the reported case of Wolf versus, uh, Wolf the, um, uh, getting to the, um, uh, to this, um, deed, uh, this, um, order in the third divorce case requiring Bobby Joe to quit claim deed, the marital home worth $900,000 to was clearly contrary to the law. The divorce court in the third divorce case could not enforce the divorce decree and the third divorce once the parties remarried. And once they, and once they were in their fourth divorce case, that's the Henry parks case. So that was, it was definitely a breach of an attorney's duty to permit that to happen. And then to persuade the client to sign the quit claim deed, and then not to appeal that decision. So that means going into the property settlement, uh, trial in the fourth divorce case, the evidence is that Bobby Joe false quit claimed the deed back to Kenneth folks, a quick claim, the marital home back to, to, uh, Kenneth false. Uh, it's a clear case of paid $52,000 and they hadn't, hadn't even completed discovery, uh, which they admit. So this is a case where, uh, first of all, the doctrine of judicial estoppel clearly does not apply. It's not the same issue. Um, it's not the same claims and the wolf versus wolf case clearly points out that you can sue an attorney, uh, for breach of the attorney's duty, uh, irrespective of the outcome of the previous property settlement agreement. Um, I would submit to the court that the trial court clearly erred in dismissing the first amendment complaint under section six 15, because it does state a cause of action. There are disputed facts. What I heard from AJ was basically a closing argument after a trial on the merits, but we're not here to do that. And the trial court also erred in dismissing under section six 19 because judicial estoppel does not apply. Actually the defendants had filed a motion to dismiss under judicial estoppel with respect to the original complaint. And that was denied by judge Coker. Uh, he then recused and the case went to judge Lopino and he denied a first motion to dismiss the first amendment complaint under the doctrine of collateral estoppel. And then the case was transferred to judge Rudolph who ruled on the second motion to dismiss the first amendment complaint. So for all of those reasons, uh, we would ask the court to reverse the decision of the trial court and remand the case for trial on the merits. Thank you counsel. The case will be taken under advisement. You're excused. Thank you, your honor.